FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 0 3 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

               Plaintiff,

          v.

JOSHUA LUCAS KAY L SCHMIDT,

               Defendant.

Case No.: 2:23-CR-0099-MKD-1

Plea Agreement

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Joshua Lucas Kay L Schmidt ("Defendant"), both individually and by and through Defendant's counsel, Nicholas Vieth, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the Superseding Indictment filed on November 7, 2023, which charges Defendant with Felon in

PLEA AGREEMENT - 1

Possession of Ammunition[1], in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), a Class C felony.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not more than 15 years;

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000; and

    d.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

_____

[1] The parties note the Defendant was charged with being a Felon in Possession of a Firearm and Ammunition. The Defendant has agreed to plead guilty in the disjunctive to Felon in Possession of Ammunition. [removed] The Defendant waives any and all claims that this charge should be present to a new grand jury.

PLEA AGREEMENT - 2

3. The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

       c.     removal from the United States and other immigration consequences are the subject of separate proceedings; and

       d.     no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

       a.     the right to a jury trial;

       b.     the right to see, hear and question the witnesses;

       c.     the right to remain silent at trial;

       d.     the right to testify at trial; and

       e.     the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§

PLEA AGREEMENT - 4

922(g)(1), 924(a)(8), the United States would have to prove the following beyond a reasonable doubt.

      a.    *First*, on or about April 25, 2023, within the Eastern District of Washington, Defendant knowingly possessed one round of .45 caliber ammunition bearing head stamp "A USA 45 AUTO";

      b.    *Second*, the ammunition had been shipped or transported in interstate or foreign commerce;

      c.    *Third*, at the time the Defendant possessed the ammunition, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

      d.    *Fourth*, at the time the Defendant possessed the ammunition, the Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On April 25, 2023, an officer with the Spokane Police Department ("SPD") was conducting uniformed patrol in the area of E Mission Ave. and N. Regal Street, Spokane, Washington, Eastern District of Washington. The officer observed a red/orange colored Ford Mustang cross E. Mission Ave and pull into a nearby parking lot. The officer recognized the Mustang from an investigation a few days prior involving two males slashing tires in northeast Spokane (Spokane

PLEA AGREEMENT - 5

Incident #2023-20074942).  Prior to making the observation, the officer had reviewed security camera footage showing a similar Fort Mustang involved in the offenses.

The officer proceeded to approached the vehicle in his patrol car.  The officer noted the driver appeared to be watching his patrol car and further noted the license plate was California 9BRR046, registered to EAN Holdings, Enterprise Rental Cars.  The officer further noted the vehicle appeared to have self-applied window tint, a custom sticker on the back, and custom exhaust tips, which based on the officer's training and experience indicates attempts to avoid law enforcement interdiction techniques.

Based upon these observations, the officer initiated an investigatory traffic stop of the Mustang.  As the vehicle slowed, it initially pulled into the turn lane on N. Green St, but then re-entered traffic.  The officer observed the driver making furtive movements in the center console area, but due to the tint on the window, he could not tell if the driver was leaning towards the backseat or the front seat.

Once the vehicle came to a stop, the officer contacted the driver, later identified as the Defendant, Joshua Kay Lucas Schmidt.  Also in the vehicle was a female passenger that appeared extremely nervous.  A subsequent records check of the Defendant indicated a valid arrest warrant for driving with a suspended license.  A DOL return also showed the Defendant was also required to operate a motor vehicle with an ignition interlock device.  The officer subsequently placed the Defendant under arrest and informed Defendant of the warrant and that he was under arrest.

A search incident to arrest revealed a loaded, metal, handgun magazine on the right side of the Defendant's belt, inside a pouch on his belt.  The magazine contained live .45 caliber pistol ammunition, specifically multiple rounds of with headstamp "A USA 45 AUTO."

PLEA AGREEMENT - 6

A Bureau of Alcohol, Tobacco, Firearms and Explosives Interstate Nexus Examiner concluded that the ammunition located on the person of the Defendant travelled in interstate and/or foreign commerce, having been manufactured outside the State of Washington but found in the State of Washington. Specifically, the Interstate Nexus Examiner made the following findings:

- PN#17: One 1911 style pistol magazine containing 7 rounds of assorted .45Auto ammunition (3 rounds headstamp marked "Federal 45 AUTO" manufactured in Minnesota, and 4 rounds headstamp marked "A USA 45 AUTO" manufactured in the Philippines and/or Nevada and/or Montana;

A review of the Defendant's criminal history reveals prior felony convictions for which the maximum term of imprisonment exceed one year as well as domestic violence convictions. The Defendant stipulates that at the time of the possession of the ammunition, he knew he had previously been convicted of a felony offense.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Count 2 of the Superseding Indictment filed on November 7, 2023, which charges Defendant with Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), 5871.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

PLEA AGREEMENT - 7

Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

 a. Base Offense Level

The United States and the Defendant agree that the base offense level for Felon in Possession of Ammunition is 20. U.S.S.G. § 2K2.1(a)(4).

 b. Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the offense involved between three and eight firearms. U.S.S.G. § 2K2.1(b)(1)(A).

The United States and the Defendant further agree the base offense level is increased by 2 levels because the offense involved a stolen firearm. U.S.S.G. §2K2.1(b)(4)(A).

The United States and the Defendant also agree the base offense level is increased by 4 levels because the offense involved a destructive device. U.S.S.G. §2K2.1(b)(3)(B).

 c. Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

 i.  accepts this Plea Agreement;

 ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

 iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

 iv. provides complete and accurate information during the sentencing process; and

 v. does not commit any obstructive conduct.

PLEA AGREEMENT - 8

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.  Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

e.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    Incarceration

The United States agrees to recommend a sentence no higher than the low end of the Guidelines, as calculated by the Court at the time of sentencing.

Defendant may recommend any legal sentence.

11.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release.  Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

PLEA AGREEMENT - 9

plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

 a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

 b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

 c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Judicial Forfeiture</u>

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

PLEA AGREEMENT - 10

- one (1) Colt 1911 style pistol magazine containing 6 rounds of assorted .45Auto caliber ammunition (consisting of 3 rounds of headstamp marked "RP 45 AUTO" manufactured in Connecticut or Arkansas, 2 rounds of headstamp marked "Winchester 45 AUTO" manufactured in Illinois, and 1 round of headstamp marked "A USA 45 Auto" manufactured in the Philippines and/or Nevada and/or Montana (PN#3);

- one (1) round of .45Auto caliber ammunition headstamp marked "A USA 45 AUTO" manufactured in the Philippines and/or Nevada and/or Montana (PN#4);

- five (5) rounds of assorted 12-gauge ammunition (4 rounds headstamp marked "Winchester 12 GA" manufactured in Illinois, and 1 round headstamp marked "Remington 12 GA" manufactured in Connecticut and/or Arkansas (PN#6);

- one (1) rifle/pistol magazine containing 29 rounds of .223 Remington ammunition headstamp marked "LC 22" manufactured in Missouri (PN#8);

- one (1) round of .223 Remington ammunition headstamp marked "LC 223 REM" manufactured in Missouri (PN#9);

- one (1) round of .45Auto ammunition headstamp marked "Federal 45 AUTO" manufactured in Minnesota (PN#10);

- one (1) 1911 style pistol magazine containing 7 rounds of assorted .45Auto ammunition (3 rounds headstamp marked "Federal 45 AUTO" manufactured in Minnesota, and 4 rounds headstamp marked "A USA 45 AUTO" manufactured in the Philippines and/or Nevada and/or Montana (PN#17);

- one (1) Camo ammo pouch containing 33 rounds of assorted 12-gauge ammunition (27 rounds headstamp marked "Winchester 12 GA" manufactured in Illinois, and 6 rounds headstamp marked "Remington 12 GA" manufactured in Connecticut and/or Arkansas (PN#18); and,

- one (1) 1911 style pistol magazine containing 6 rounds of .45Auto ammunition headstamp marked "Federal 45 AUTO" manufactured in Minnesota (PN#29).

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as

PLEA AGREEMENT - 11

property involved or used in the commission of the offense Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Abandonment

Defendant does not claim an interest in the following listed assets and agrees to abandon the assets to the Federal Bureau of Investigation (FBI):

- a Norinco, Model of the 1911 style, .45Auto caliber semi-automatic pistol, bearing serial number 302432, manufactured in China (PN#2);

- a Mossberg, model 590, 12-gauge [sawed-off] pump action shotgun, bearing serial number V0827652, manufactured in Connecticut (PN#5);

- a Ruger, model AR556, semi-automatic rifle bearing serial number 855-07903, manufactured in North Carolina (PN#7).

PLEA AGREEMENT - 12

Defendant agrees to take all steps as requested by the United States and FBI to effectuate the abandonment of the assets to FBI and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal of the assets, including destruction of the assets and/or return of the assets to a lawful owner(s).

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and disposal of the assets listed above.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that FBI might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the assets including any such claim for attorney fees and litigation costs.

14.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 13

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17.   Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18.   Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.   any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b.   the United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 14

c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 15

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____ for Pat Cashman    4-3-2024
Patrick J. Cashman                                    Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    4/3/24
Joshua Kay Lucas Schmidt            Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's

PLEA AGREEMENT - 16

decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     4/3/2024
Nicholas Vieth                      Date
Attorney for Defendant

PLEA AGREEMENT - 17